## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRUCE DAWSON and JOHN TAMBURINI, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civ. No. 19-8680 |
| v. | **OPINION** |
| GENERAL MOTORS LLC, | |
| Defendant. | |

THOMPSON, U.S.D.J.

### INTRODUCTION

This matter comes before the Court upon the Motion to Dismiss filed by Defendant

General Motors LLC. (ECF No. 13.) Plaintiffs Bruce Dawson and John Tamburini (collectively,

"Plaintiffs") oppose and, in the alternative, seek leave to amend. (ECF No. 16.) The Court has

decided the Motion on the written submissions of the parties, pursuant to Local Civil Rule

78.1(b). For the reasons stated herein, the Motion is granted, and Plaintiffs are granted leave to

amend.

### BACKGROUND

This putative class action is brought against Defendant, which allegedly installed Bosch

CP4 fuel injection pumps in its diesel vehicles that were incompatible with American diesel fuel,

making the vehicles prone to catastrophic failure.[1]

---

[1] The phrase "catastrophic failure" is used throughout the Complaint, but it apparently does not

## I. Defendant's Representations and Warranty

In purchasing pickup trucks manufactured by Defendant, Plaintiffs:

> relied on representations from [Defendant] and its authorized dealership that the vehicle was compatible with American diesel fuel, was durable, and was reliable . . . . in combination with the advertised fuel efficiency and performance, the representation that the vehicle would retain all of its promised fuel economy and performance throughout its useful life, and the vehicle's reputation for maintaining a high resale value . . . . Neither [Defendant] nor any of its agents, dealers, or other representatives informed [Plaintiffs] of the existence of the unlawfully and/or unexpectedly defective nature of the [fuel pump system].

(Compl. ¶ 19; *accord id.* ¶¶ 17, 24.) A brochure issued by Defendant stated, "[W]hen our engineers created the new 2011 GMC Sierra Heavy Duty Series, they left no bolt unturned. By rejecting compromise and crafting every detail, GMC delivered the strongest, most powerful and most capable lineup of Sierra HD Pickups, ever." (*Id.* ¶ 51.) It also stated,

> [t]he available new Duramax diesel 6.6L V-8 Turbo . . . [is] engineered to achieve a goal that most assumed to be impossible: improving power and mileage, together. Advanced diesel direct-injection technology and an adaptive transmission controller help Duramax to run at peak efficiency, and provide you with a highway mileage range of up to 680 highway miles.

(*Id.* (brackets in original).)

Defendant provided a warranty stating, "For trucks equipped with a 6.6L DURAMAX Diesel Engine [which included Plaintiffs' vehicles], the complete engine assembly, including turbocharger components, is covered for defects in material or workmanship for 5 years or 100,000 miles, whichever comes first." (Warranty at 16, ECF No. 13-4.) This warranty explicitly includes the fuel pump. (*Id.*)[2] According to the Complaint, consumers will pay a premium for

_____

mean irreparable failure. For example, after one of Plaintiff Dawson's trucks "experienced a catastrophic failure," it was repaired and he continued to use it for some time thereafter. (Compl. ¶ 18, ECF No. 1.)

[2] Defendant also issued a warranty covering the complete vehicle for three years or 36,000 miles,

diesel pickup trucks because they "are known to last hundreds of thousands of miles longer than gasoline pickup trucks," and consumers expect the vehicles to perform well past the warranty period. (*Id.* ¶¶ 50, 66.)

## II. Fuel Pump Failures

In October 2010, Plaintiff Dawson purchased a new 2011 GMC Sierra 3500 pickup truck from a dealership in Manahawkin, New Jersey, for both personal use and for his boat-hauling business. (*Id.* ¶ 16.) In the fall of 2013, at which point the truck had approximately 165,000 miles, Plaintiff Dawson was using the truck to haul a boat when the fuel pump experienced a catastrophic failure. (*Id.*)

In April 2015, Plaintiff Dawson purchased a new 2016 GMC Sierra 3500 pickup truck from a dealership in Manahawkin. (*Id.* ¶ 18.) In the fall of 2017, the truck experienced a catastrophic failure while hauling a boat. (*Id.*)

On August 25, 2015, Plaintiff Tamburini purchased a new 2015 GMC Sierra 2500 pickup truck from a dealership in Manahawkin for both business and personal use. (*Id.* ¶ 21.) On December 27, 2017, when the vehicle had 128,543 miles, the fuel pump failed, causing the gas throttle pedal to become hesitant and then nonresponsive and preventing the vehicle from accelerating. (*Id.* ¶ 22.) Plaintiffs paid towing and repair costs and lost business income as a result of the incidents. (*Id.* ¶¶ 16, 18, 23.)

The Bosch CP4 fuel injection pump[3] relies on diesel fuel for lubrication. (*Id.* ¶ 58.) The

---

and a warranty for the powertrain for five years or 100,000 miles. (*Id.* at 4.)

[3] "The fuel injection pump is an essential part of the diesel engine. Diesel engines – like gasoline engines – convert fuel into energy through a series of small explosions or combustions. In general, a diesel fuel system injects precise amounts of pressurized diesel fuel at specific times. When the fuel mixes with hot compressed air combustion occurs. Immense amounts of

Complaint avers that United States EPA regulations require the use of ultra-low sulfur diesel fuel, which has less lubricity. (*Id.* ¶ 59.) American diesel fuel must have a maximum wear scar diameter of 520 microns, but the CP4 pump allows for a maximum wear scar diameter of only 460 microns. (The lower the wear scar diameter, the higher the lubricity.) In other words, the fuel pump requires more lubricity than American diesel fuel is required to have. (*Id.* ¶ 60.)

## III.  Allegations Concerning Defendant's Knowledge of the Fuel Pump Problem

Plaintiffs allege that Defendant "has long been aware" of this incompatibility problem, which is "known within the automotive industry." (*Id.* ¶¶ 67–68.) The Truck & Engine Manufacturers' Association ("EMA"), of which Defendant is a member, issued a position statement in 2002 that stated,

> Diesel fuel injection equipment relies on the lubricating properties of fuel. Shortened life of engine components such as fuel injection pumps and unit injectors can usually be attributed to lack of fuel lubricity and, hence, lubricity is of concern to engine manufacturers. This property is not addressed adequately by ASTM D 975 [*i.e.*, the lubricity specifications of diesel fuel].

(*Id.* ¶ 68; *see also id.* ¶ 60 (describing the meaning of "ASTM D 975").) In 2005, EMA issued a position paper stating,

> ASTM D975 currently requires lubricity specified as a maximum wear scar diameter of 520 micrometers[. H]owever, fuel injection equipment manufacturers have required that [ultra-low sulfur diesel] fuels have a maximum wear scar of 460 micrometers. EMA recommends that the lubricity specification be consistent with the fuel injection equipment manufacturers' recommendation.

(*Id.* ¶ 69.)

The Complaint alleges that various communications to the National Highway Traffic

---

pressure are needed to compress diesel fuel.  The diesel high-pressure injection pump is responsible for compressing the diesel fuel in preparation for injection into the combustion chamber." (Compl. ¶ 55.)

Safety Administration ("NHTSA") also help to establish Defendant's knowledge of the fuel

pump issue. (*Id.* ¶¶ 71–76.) In 2011, Bosch submitted documentation to NHTSA stating that

Audi had sent Bosch a CP4 fuel pump that had "failed catastrophically" for analysis and that

Bosch "need[ed] to determine if component failure or bad fuel is to blame." (*Id.* ¶ 71.) The

documentation from Bosch also noted metal debris that would be characteristic of CP4 pump

failure. (*Id.*; *see also id.* ¶ 61 (explaining that metal shavings in the fuel system would result

from this failure).) In 2012, Bosch submitted to NHTSA an email from Volkswagen in which

Volkswagen sent a "change request in [the] form of exemplary documents on failures of high-

pressure diesel pump Bosch CP4" and noted "I think the failures are well known." (*Id.* ¶ 72.)

In December 2011, Defendant provided NHTSA with information as part of NHTSA's

investigation of high pressure fuel pump failure in Volkswagen and Audi vehicles. (*Id.* ¶ 73.)

Defendant stated that it knew of at least ninety-nine field reports of CP4 high pressure fuel pump

failure in the 2011 Chevrolet Silverado. (*Id.* ¶ 73.)

Additionally, several complaints were made to NHTSA by consumers between 2014 and

2017 concerning fuel pump failure, two of which were submitted in or before August 2015. (*Id.* ¶

76.) "All automobile manufacturers routinely monitor and analyze NHTSA complaints because

this information is used in determining if a recall should be issued," so the Complaint alleges that

Defendant "knew or should have known" about these complaints. (*Id.* ¶ 75.) Consumers also

complained on online forums. (*Id.* ¶ 77.)

In August 2014 and again in March 2017, Defendant issued a bulletin to dealers stating

that, where a fuel injection pump must be replaced, "Fuel Pressure regulator 1 must be inspected

for magnetic metal debris." (*Id.* ¶¶ 78 (2014), 79 (2017).) Finally, Plaintiffs assert that:

Defendant was also aware of the defect through (1) their own records of

customers' complaint[s], (2) dealership repair records, (3) warranty and post-warranty claims, (4) internal durability testing, and (5) other various sources. Additionally, there are numerous independent kits provided by independent suppliers, which are designed to redirect the lubricating fuel for the CP4 back to the fuel tank, so it will be filtered before it returns to the engine. GM would have been aware of such kits, which are only incomplete remedies.

(*Id.* ¶ 80.)

## IV. The Present Case

Plaintiffs filed the Complaint on March 15, 2019, alleging five Counts: (I) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 *et seq.* (Compl. ¶¶ 83–94); (II) breach of express warranty under N.J.S.A. § 12A:2-313 (Compl. ¶¶ 95–105); (III) breach of implied warranty under N.J.S.A. § 12A:2-314 (Compl. ¶¶ 106–15); (IV) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.* (Compl. ¶¶ 116–32); and (V) unjust enrichment (*id.* ¶¶ 133–39). On May 20, 2019, Defendant filed the present Motion to Dismiss. (ECF No. 13.) Plaintiffs opposed on June 17, 2019 (ECF No. 16), and Defendant replied on July 1, 2019 (ECF No. 20). The Motion is presently before the Court.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.*; *see also Iqbal*, 556 U.S. at 679. Finally, the court must

assume the veracity of all well-pleaded factual allegations and "determine whether the facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679); *see also Malleus*, 641 F.3d at 563. If the complaint does not demonstrate more than a "mere possibility of misconduct," it must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Allegations of fraud require more detailed pleading. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff "must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85–86 (3d Cir. 2015) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)). The particularity standard ensures that "defendants [are placed] on notice of the precise misconduct with which they are charged, and [are safeguarded] against spurious charges of immoral and fraudulent behavior." *Id.* (citing *Lum*, 361 F.3d at 223–24).

Although a district court generally must confine its review on a Rule 12(b)(6) motion to the pleadings, *see* Fed. R. Civ. P. 12(d), "a court may consider certain narrowly defined types of material" beyond the pleadings, *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999), including matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal citation omitted).

## **DISCUSSION**

Defendant provided a warranty for the Bosch CP4 fuel pump and other engine parts "for defects in material or workmanship for 5 years or 100,000 miles, whichever comes first."

(Warranty at 16.) But for each of Plaintiffs' vehicles, the catastrophic failure of the fuel pump

occurred after 100,000 miles.[4] Because the defects manifested themselves outside the warranty

period,[5] many of Plaintiffs' claims require a showing that Defendant knew with certainty that the

fuel pump would fail. As explained in more detail below, Plaintiffs fail to allege facts sufficient

to demonstrate the requisite knowledge, so the Complaint is dismissed.

## I.      Plaintiffs Fail to State a Claim Under the NJCFA

The NJCFA prohibits

> [t]he act, use or employment by any person of any unconscionable commercial
> practice, deception, fraud, false pretense, false promise, misrepresentation, or the
> knowing, concealment, suppression, or omission of any material fact with intent
> that others rely upon such concealment, suppression or omission, in connection
> with the sale or advertisement of any merchandise.

N.J.S.A. § 56:8–2. An NJCFA claim requires showing (1) unlawful conduct, (2) an ascertainable

loss, and (3) a causal relationship between the conduct and the loss. *Int'l Union of Operating*

---

[4] For two of the three vehicles (Plaintiff Dawson's 2011 GMC Sierra 3500 and Plaintiff
Tamburini's GMC Sierra 2500), the Complaint specifically states that the vehicles had surpassed
100,000 miles. (Compl. ¶¶ 16, 220.) The Complaint does not state the mileage of the third
vehicle (Plaintiff Dawson's 2016 GMC Sierra 3500), but Defendant states in its moving brief
that the catastrophic failures all occurred outside the warranty period (Mot. at 8), and Plaintiffs
do not dispute this contention directly in their Opposition (*see* Opp'n at 20–23). In any case, the
Complaint lacks any facts showing that the catastrophic failures occurred within the warranty
period, and, in fact, the Complaint suggests the opposite in many instances. (*See, e.g.*, Compl. ¶ 8
("Since the problem typically manifests within and/or shortly outside of the warranty period for
the Class Vehicles—and given Defendant's knowledge of the problem—any attempt by
Defendant to limit the warranty with respect to the defect is unconscionable.").)
[5] Plaintiffs argue that "the defect is present and manifests itself at the time of purchase because
the CP4 fuel pump is always incompatible with American diesel, including from the time of sale
and thereafter." (Opp'n at 21.) This argument fails for two reasons. First, manifest means "to
make evident or certain by showing or displaying," and the Complaint lacks any facts showing
that the fuel pump defects were made evident or certain prior to the catastrophic failures
described. Second, even if the defect had manifested itself before the warranty expired, the
warranty requires that the owner "take the vehicle to a GMC dealer facility within the warranty
period," which did not occur here. (Warranty at 4.)

*Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007) (internal citation omitted). Unlawful conduct could consist of (a) an affirmative act (such as an unconscionable commercial practice, fraud, or misrepresentation), (b) a knowing omission, or (c) a regulatory violation. *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 790–91 (N.J. 2005) (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994)).

Plaintiffs assert two theories of liability under NJCFA: affirmative misrepresentations and knowing omissions. (Opp'n at 11–18.) As to the first, Plaintiffs do not successfully assert any affirmative misrepresentations by Defendant. Some of the statements described in the Complaint lack the required particularity. Rule 9(b) requires that Plaintiffs "state with particularity the circumstances constituting fraud." *See Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir. 1992) (stating that Rule 9(b) requires, among other things, pleading "a specific false representation of material fact"). For example, the Complaint mentions "the representation that the vehicle would retain all of its promised fuel economy and performance throughout its useful life" (Compl. ¶¶ 17, 19, 24), but does not say specifically what was said, who said it, or when they did so. Other affirmative statements fall short as well: Defendant's statement that its engineers "left no bolt unturned;" that it "delivered the strongest, most powerful and most capable lineup of Sierra HD Pickups, ever;" and that the engine "improv[es] power and mileage," "run[s] at peak efficiency," and provides "a highway mileage range of up to 680 highway miles." (*Id.* ¶ 51.) The parties disagree as to whether these statements are inactionable puffery. (*Compare* Mot. at 7, *with* Opp'n at 11–13.) But even if these statements are not puffery, Plaintiffs have not shown how the alleged fuel pump failure makes any of the statements untrue.

Plaintiffs' knowing omission theory is hampered by the existing warranty. In a case where a good is covered by a warranty and becomes defective after the warranty period has

expired, an NJCFA violation occurs only when the defendant has specific knowledge of the

defect: "It is not sufficient to allege that the defendant manufacturer knew that a part *might*

fail . . . . [U]nless a defendant manufacturer knows with certainty that a product *will* fail, it does

not violate the NJCFA by failing to inform its consumers of the *possibility* of failure." *Alban v.*

*BMW of N. Am.*, 2010 WL 3636253, at *10 (D.N.J. Sept. 8, 2010) (emphasis in original); *see*

*also Gelis v. BMW Aktiengesellschaft*, 2018 WL 6804506, at *8 (D.N.J. Oct. 30, 2018); *Glass v.*

*BMW of N. Am.*, 2011 WL 6887721, at *9–10 (D.N.J. Dec. 29, 2011); *Luppino v. Mercedes-Benz*

*USA, LLC*, 2010 WL 3258259, at *7 (D.N.J. Aug. 16, 2010); *Maniscalco v. Brother Int'l Corp.*,

627 F. Supp. 2d 494, 501–02 (D.N.J. 2009). This kind of NJCFA claim—based on the

manufacturer's specific knowledge in light of an expired warranty—is available only in a narrow

set of circumstances because creating liability beyond the warranty period "would essentially

compel manufacturers and sellers to warrant their products and component parts beyond that to

which the parties expressly agreed [and] rewrite contracts into which parties have freely and

voluntarily entered." *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997, 1005 (N.J. Super. Ct.

App. Div. 2006).

In this case, then, the question is whether Defendant "kn[ew] with certainty" that the CP4

fuel pump would fail, *see Alban*, 2010 WL 3636253, at *10, and Plaintiffs must meet the

heightened fraud-pleading standards of Rule 9(b). Some of Plaintiffs' allegations are too general

to meet that standard: for example their claim that Defendant "has long been aware" of the defect

(Compl. ¶ 67) or general mentions of "customers' complaint[s]" or "warranty and post-warranty

claims" (*id.* ¶ 80). Additionally, because Plaintiffs must show that Defendant knew about the

defect at the time that Plaintiffs purchased their vehicles between October 2010 and August 2015

(*see, e.g.*, *id.* ¶¶ 16, 18, 21), the Court will not consider any revelations that occurred after that

date (*id.* ¶¶ 76 (post-2015 consumer complaints), 79 (2017 bulletin to dealers))).

Eliminating those general and irrelevant allegations, Plaintiffs have put forward (1) EMA position papers stating that "lubricity is of concern" and recommending "that the lubricity specification be consistent with the fuel injection equipment manufacturers' recommendation" (*id.* ¶¶ 68–69); (2) communications from Bosch to NHTSA describing one failed fuel pump and attaching an email from Volkswagen stating, "I think the failures are well known" (*id.* ¶¶ 71–72); (3) Defendant's own reports to NHTSA that it knew of at least ninety-nine field reports of fuel pump failure in the 2011 Silverado (*id.* ¶ 73); (4) two consumer complaints made to NHTSA and several made in online forums (*id.* ¶¶ 76–77); and (5) Defendant's bulletin to dealers instructing them to check for magnetic metal debris when a fuel injection pump is replaced (*id.* ¶ 78). These facts, at best, suggest that lubricity was a concern and that fuel pumps occasionally failed. They do not, however, rise to the high bar of showing that Defendant knew with certainty that the pumps were deficient, for several reasons. First, statements expressing "concern" and describing "well known" fuel-pump failures do not say much about how frequent the failures were. Second, the ninety-nine consumer complaints submitted by Defendant to NHTSA plus the handful made by consumers to NHTSA and in online forums are not numerous; a company cannot be certain about a systemic part failure based on about 100 instances of failure in a national market over the course several years. Finally, several of the allegations concern communications made by EMA, Bosch, and Volkswagen, along with suppositions that Defendant was aware of these communications; that these communications were made by other parties does not totally negate their significance, but it does weaken their strength in establishing that Defendant must have known about the fuel pump. In a case such as this, Plaintiffs have the heavy burden of pleading that Defendant knew with certainty that the fuel pumps would fail. Because Plaintiffs have not

11

carried their burden here, their NJCFA claim is dismissed.

**II.     Plaintiffs Fail to State a Claim for Breach of Express Warranty**

To prevail on a claim for breach of express warranty in New Jersey, a plaintiff must

prove the following: "(1) that Defendant[s] made an affirmation, promise or description about

the product; (2) that this affirmation, promise or description became part of the basis of the

bargain for the product; and (3) that the product ultimately did not conform to the affirmation,

promise or description." *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 324 (D.N.J. 2014)

(citing N.J.S.A. § 12A:2-313; *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818,

824 (3d Cir. 1999); *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011)). Here,

Defendant provided a warranty, but the warranty expired before any of the alleged failures

associated with the fuel pump. For this reason, Plaintiffs' express warranty claim fails. *See Skeen*

*v. BMW of N. Am., LLC*, 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014); *Kuzian v. Electrolux*

*Home Prods., Inc.*, 937 F. Supp. 2d 599, 611 (D.N.J. 2013).

Plaintiffs argue that the warranty's time and mileage limitations are unconscionable and

therefore inapplicable. (Opp'n at 22–23.) Cases in the District of New Jersey are split as to

whether a manufacturer's knowledge of a defect, by itself, makes the warranty's limitation

period unconscionable. *See Skeen*, 2014 WL 283628, at *14 (describing the split). But in any

case, Plaintiffs have failed to plead that Defendant knew of the defect. Plaintiffs therefore fail to

plead unconscionability.[6]

---

[6] Additionally, the warranty covers only "materials and workmanship," which does not include
design defects. *Galo Coba v. Ford Motor Co.*, 2019 WL 2911065, at *5–7 (3d Cir. July 8, 2019).
Plaintiffs thus fail to state a claim for this additional reason.

**III.     Plaintiffs Fail to State a Claim for Breach of Implied Warranty**

"A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.J.S.A. § 12A:2-314(1). Merchantable goods, among other things, "are fit for the ordinary purposes for which such goods are used." § 12A:2-314(2)(c). Generally, an implied warranty does not extend beyond the time or mileage limitation provided by an express warranty, *Suddreth v. Mercedes-Benz, LLC*, 2011 WL 5240965, at *4 (D.N.J. Oct. 31, 2011); *Nobile v. Ford Motor Co.*, 2011 WL 900119, at *4 (D.N.J. Mar. 14, 2011) (citing N.J.S.A. § 12A:2-317); *McCalley v. Samsung Elecs. Am., Inc.*, 2008 WL 878402, at *7 (D.N.J. Mar. 31, 2008) (citing § 12A:2-317), and Plaintiffs provide no compelling reason to depart from that rule. Plaintiff's implied warranty claim fails.

**IV.     Plaintiffs Fail to State a Claim Under the MMWA**

The MMWA allows a suit brought by "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). "[MMWA] claims based on breaches of express and implied warranties under state law depend upon those state law claims." *Stevenson v. Mazda Motor of Am., Inc.*, 2015 WL 3487756, at *13 (D.N.J. June 2, 2015) (internal citations omitted). "Thus, if there exists no actionable [state law] warranty claim, there can be no violation of the MMWA." *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 600 (D.N.J. 2016). Because Plaintiffs' state law claims do not survive, neither does their MMWA claim.

**V.     Plaintiffs Fail to State a Claim for Unjust Enrichment**

Unjust enrichment is a "quasi-contract doctrine." *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007). To prove unjust enrichment,

> a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust. The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.

*VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (internal citations omitted). In this case, Plaintiffs have not shown that they "performed or conferred a benefit" on Defendant because they have not alleged a "direct relationship" between the parties. *See Alin v. Am. Honda Motor Co.*, 2010 WL 1372308, at *14–15 (D.N.J. Mar. 31, 2010). Plaintiffs paid substantial sums of money for their vehicles, but they paid these sums—and thus conferred a benefit—to the dealerships. (Compl. ¶¶ 16, 18, 21.) The Complaint does not specify if or how this benefit accrued to Defendant. It is not difficult to imagine that Defendant has benefitted through the sales of its cars, *see Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 199–200 (D.N.J. 2012) ("[W]here a plaintiff [consumer] alleges that a defendant manufacturer has made false claims or misrepresentations directed for the purpose of generating retail sales, and where those retails sales could have the effect of increasing the amount of wholesale sales to the manufacturer, it is plausible that a plaintiff can show evidence of a sufficiently direct relationship between the parties . . . ."), but Plaintiffs must connect those dots in the pleadings. Because they fail to do so here, their unjust enrichment claim is dismissed.

## VI. Plaintiffs Are Granted Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure allows amendment of the pleadings with the court's leave, which should be freely given. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Plaintiffs are granted leave to file an amended complaint, in accordance with Local Civil Rule 15.1(b).

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is granted and leave to amend

is granted. An appropriate Order will follow.


Date:    7/22/19                                              */s/ Anne E. Thompson*
                                                         ANNE E. THOMPSON, U.S.D.J.